IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARTISSA GAINES,  CV. 05-689-PK

           Plaintiff,  FINDINGS & RECOMMENDATION

v.

NORDSTROM, INC.,

           Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Artissa Gaines ("Gaines") filed this action against Defendant Nordstrom, Inc. ("Nordstrom") claiming civil rights violations under 42 U.S.C. § 1981 (right to make and enforce contracts), 42 U.S.C. § 2000a ("Title II")(discrimination in places of public accommodation), and Or. Rev. Stat. § 659A.403 (state law discrimination in places of public accommodation). Gaines also brings three state law tort claims: (1) intentional infliction of emotional distress; (2) false imprisonment; and (3) assault.

      The court has original jurisdiction over Gaines's federal claims pursuant to 28 U.S.C.

Page 1 - FINDINGS & RECOMMENDATION

§ 1331. The court has supplemental jurisdiction over Gaines's state law claims pursuant to 28 U.S.C. § 1367. Before the court is Nordstrom's Motion for Summary Judgment against all of Gaines's claims. For the reasons that follow, this court recommends that Nordstrom's Motion for Summary Judgment (No. 20) be granted as to the civil rights claims and the intentional infliction of emotional distress claim, and that the court decline to exercise supplemental jurisdiction on the false imprisonment and assault claims, instead dismissing these claims without prejudice.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56.

When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); <u>Freeman v. Arpaio</u>, 125 F.3d 732, 735 (9th Cir. 1997).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Only after the moving party has made such a showing does the burden shift to the opposing party to show that a genuine issue of fact remains. <u>See</u> Fed. R. Civ. P. 56(e).

To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial.  See Celotex Corp., 477 U.S. at 322-23; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). The opposing party may not rest on conclusory allegations or mere assertions, see Taylor, 880 F.2d at 1045; Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, see Anderson, 477 U.S. at 249-50; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Taylor, 880 F.2d at 1045.

## FACTUAL BACKGROUND

Because this is a Motion for Summary Judgment, the court must view the facts in the light most favorable to the non-moving party and draw all inferences in the non-moving party's favor.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).  Accordingly, these facts are presented in the light most favorable to Gaines.

Gaines is African-American and Native American.  On the evening of January 23, 2004, Gaines went to Nordstrom's store in downtown Portland, Oregon to use the restroom.  Then she decided to try on clothes.

After trying on a Missoni outfit that retails for $2,460, Gaines left the department she was in and went to the men's department on the opposite side of the store.  A Nordstrom employee became concerned that Gaines left her department wearing the expensive Missoni outfit, and she

notified Amber Powers ("Powers"), one of Nordstrom's loss prevention employees. Powers and another loss prevention employee, Thomas Udy, began watching Gaines's movement via closed circuit surveillance and by observing her in person on the floor. They did not approach Gaines or interfere with her browsing.

Gaines walked around Nordstrom in the Missoni outfit for approximately 50 minutes. She tried on clothes in various dressing rooms, but always returned to the floor wearing the Missoni outfit to browse more. While Gaines was trying on clothes she did not ask for assistance from any Nordstrom sales clerks, and according to Gaines no assistance was offered to her. Gaines states that one sales clerk made a positive comment about one of the items she tried on. That was her only contact with a Nordstrom's employee while she was browsing and trying on clothes. However, Gaines testified that she overheard an exchange between two Nordstrom sales clerks who said something to the effect of "who does she think she is?" and "she can't afford that."

After about 50 minutes of browsing, Gaines misplaced her purse and went to a sales counter to look for it. Powers and Udy were standing near the sales counter and were watching Gaines closely. A video-tape account of Gaines at the sales counter was preserved and is part of the record in this case.

The sales clerks at the counter were helping other customers. Gaines walked behind the counter, interrupting sales clerk Andra Williams ("Williams"), and said, "Excuse me, I misplaced my purse. Has anyone turned it in?" Gaines was standing very close to Williams during this encounter. Williams told Gaines to check with the customer service department to see if her purse had been turned in, and Williams gave Gaines directions to customer service. Williams

then moved from one side of the counter to the other. Gaines followed and moved even closer so that she was invading Williams' personal space. Williams made eye contact with Powers and signaled for assistance.

Gaines walked out from behind the sales counter in the direction of Powers, and Powers walked toward Gaines. Powers put her right arm straight out in front of her and initiated the first contact with Gaines. Powers grabbed Gaines's left wrist, then attempted to grab her right wrist. Gaines was able to move away from Powers at which time Gaines put down a magazine she was holding and assumed a fighting position. Gaines crouched and threw a kick that appears to have narrowly missed or only barely hit Powers. After Gaines threw the kick, Udy came to Powers' assistance. Together, Powers and Udy quickly gained control of Gaines and handcuffed her. Powers stated that she detained Gaines at this point because she believed that Gaines "was a danger to me and others." (Decl. of Amber Powers ¶ 7.) The videotape shows that approximately one minute and nine seconds elapsed between the time Gaines first walked up to the sales counter to the time she was handcuffed and escorted out of the sales counter area.

Powers and Udy took Gaines to a holding room at Nordstrom. Powers immediately called the Portland Police Department, and Gaines stayed in the holding room until the police arrived. While in the holding room, there was little interaction with Gaines. She was not interrogated by Powers and Udy. Gaines asked for an ambulance because her handcuffs were too tight. Powers offered to loosen the handcuffs but Gaines would not allow her to access the cuffs.

Portland Police arrived in about an hour, and they took Gaines to jail. The Multnomah County district attorney's office charged Gaines with attempted theft in the first degree and

attempted assault in the fourth degree. Gaines's trial was set for March 2004. Between the time of Gaines's arrest and her trial date, Powers left Nordstrom to take another job. Nordstrom did not have Powers' contact information and the district attorney's office was unable to locate her. Because Powers was a primary witness and was unavailable at the time of trial, the district attorney dismissed the case against Gaines.

## ANALYSIS

Nordstrom has moved for summary judgment against each of Gaines's claims. In response, Gaines has provided little in the way of evidence or argument to support her claims or create a genuine issue of material fact for trial. Gaines's memorandum opposing summary judgment consists of just five conclusory paragraphs. No cases are cited, and there is no analysis or argument. In addition, Gaines's responsive documents were filed out of time and in abrogation of court rules. Nonetheless, the court has carefully considered the evidence in the light most favorable to Gaines as the non-moving party and attempted to understand, as best as is possible under the circumstances, Gaines's theories.

### I. Federal Discrimination Claims

The familiar McDonnell Douglas burden-shifting methodology is used to analyze claims of intentional discrimination even when the claims do not arise in the context of employment. Lindsey v. SLT Los Angeles, Inc., 447 F.3d 1138, 1144 (9th Cir. 2006)(applying McDonnell Douglas to § 1981 claim); see also Hornick v. Noyes, 708 F.2d 321, 325 & n. 8 (7th Cir. 1983) (applying McDonnell Douglas to Title II claim); Afkhami v. Carnival Corp., 305 F.Supp.2d 1308, 1321 (S.D. Fla. 2004)(applying McDonnell Douglas to both § 1981 and Title II claims). To survive summary judgment, Gaines must first establish a prima facie case of discrimination.

Page 6 - FINDINGS & RECOMMENDATION

If Gaines establishes a prima facie case, the burden shifts to Nordstrom to articulate a legitimate nondiscriminatory reason for its action.  If Nordstrom meets its burden of production, Gaines must demonstrate that Nordstrom's proffered reasons are pretext for a discriminatory motive.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  Lowe v. City of Monrovia, 775 F.2d 998, 1005 (9th Cir. 1985).

     A plaintiff can establish a prima facie case of discrimination with direct or circumstantial evidence of discriminatory intent.  Lowe, 775 F.2d at 1009.  Direct evidence is evidence which, if believed, proves "discriminatory animus without inference or presumption."  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)(quotations and citations omitted).  Direct evidence generally "consists of clearly sexist, racist, or similarly discriminatory statements or actions. . . ."  Coghlan v. American Seafoods Co., 413 F.3d 1090, 1095 (9th Cir. 2005).

     Gaines has not submitted direct evidence of discriminatory intent.  Although Gaines alleges she overheard two Nordstrom employees saying something to the effect of "who does she think she is?" and "she can't afford that," these are not the kinds of statements that constitute direct evidence of discriminatory intent.  These are race-neutral comments on their face and require an inference or presumption to arrive at the conclusion the speaker had discriminatory intent.  See Putman v. Unity Health System, 348 F.3d 732, 735 (8th Cir. 2003)(facially race-neutral comments not direct evidence of race discrimination).  Because she has no direct evidence of discrimination, to survive summary judgment on the federal discrimination claims Gaines must rely on circumstantial evidence to make a prima facie case of discrimination.

                       A.  § 1981 Claim

The elements of a circumstantial prima facie case of discrimination in a § 1981 interference with contract case are unsettled in the Ninth Circuit. Lindsey, 447 F.3d at 1144-45. At a minimum, Gaines must show that: (1) she is a member of a protected class; (2) she attempted to contract for certain services; and (3) she was denied the right to contract for those services. Id. The Ninth Circuit has declined to decide on the scope of the third element, but has indicated that it finds the Sixth Circuit's formulation compelling which would require a showing "'that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.'" Id. at 1145 (quoting Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 872 (6th Cir. 2001)).

Gaines meets the first element of a prima facie case because she is a member of a racial minority. However, she fails to meet her burden of proof on the second. In order to satisfy the second element, the plaintiff must present some evidence that she "attempted to contract" with the defendant. Lindsey, 447 F.3d at 1145. In a retail setting such as this one, factors relevant to this inquiry include whether the plaintiff had selected merchandise to actually purchase, whether she had the means to complete the purchase, and whether she would have, in fact, made the contemplated purchase. See Christian, 252 F.3d at 874.

Gaines simply presents no evidence that she attempted to contract, or would have attempted to contract with Nordstrom had she not been detained. In her affidavit, Gaines testifies that she initially went to Nordstrom to "use the restroom." (Aff. of Artissa Gaines ¶ 1.) Only afterward did she decide "to try on clothes." (Id.) In her deposition, Gaines was asked several questions attempting to elicit whether she was at Nordstrom that day to browse or

whether she was going to purchase something. Her response to each question was that she was "simply trying on clothes." (Decl. of Victoria Blachly Ex. 1 p. 14 of 30.) Although she walked around Nordstrom for 50 minutes in the Missoni outfit, Gaines presented no evidence that she was going to buy that outfit or any other item. See Morris v. Office Max, Inc., 89 F.3d 411, 414 (7th Cir. 1996)(summary judgment granted where there was no evidence the plaintiffs would have purchased anything had they not been approached by police). She also presented no evidence that she had the means to buy anything she tried on that day.

Gaines also does not satisfy the third element of her prima facie case. She has presented no evidence she was denied services while similarly situated persons outside her protected class were not. Even assuming the Ninth Circuit ultimately adopts the more lenient formulation of this prong of the test, Gaines has presented no evidence of actions by Nordstrom employees that could be reasonably construed as "objectively discriminatory."

In sum, Gaines utterly failed to produce evidence on two elements of her prima facie case. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23. Accordingly, the court recommends granting summary judgment in favor of Nordstrom on the § 1981 claim.

B. Title II Claim

Under Title II, all persons are "entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground

of race, color, or national origin."[1]  There is a dearth of case law on the appropriate characterization of a prima facie case for a claim brought under Title II.  At the end of the day, however, there is also a dearth of evidence and argument from Gaines on this claim.  As with the § 1981 claim, Gaines fails to make out a prime facie case that the conduct of Nordstrom, through its employees, was discriminatory.  Accordingly, this court recommends granting summary judgment in favor of Nordstrom on the Title II claim.

II. State Law Discrimination in Places of Public Accommodation

Oregon's law prohibiting discrimination in places of public accommodation provides that "[a]ll persons . . . shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race . . . ." Or. Rev. Stat. § 659A.403.  This includes more than an "outright denial of service."  King v. Greyhound Lines, Inc., 61 Or. App. 197, 202, 656 P.2d 349, 351 (1982).  It also "proscribes serving customers of one race in a manner different from those of another race."  Id.;  see also Allen v. U.S. Bancorp, 264 F.Supp.2d 945, 953 (D. Or. 2003)(bank customer treated differently when asked to remove his sunglasses while white customers were not).

---

[1] As a threshold matter, Gaines has failed to argue or offer any evidence to establish that Nordstrom is a "place of public accommodation" for purposes of Title II.  In the same vein, Nordstrom, as movant, failed to argue that summary judgment ought to be grounded on this issue.  Section 2000a(b)(2) provides a detailed list of "places of public accommodation."  Retail establishments are not included in that list.  Courts have consistently held that retail stores such as Nordstrom are not "places of public accommodation" and thus are not subject to liability under Title II.  See e.g. Priddy v. Shopko Corp., 918 F.Supp. 358 (D.Utah 1995); Gigliotti v. Wawa, Inc., 2000 WL 133755 (E.D. Pa. Feb. 2, 2000); McCrea v. Saks, Inc., 2000 WL 1912726 (E.D. Pa. Dec. 22, 2000); Chu v. Gordmans, Inc., 2002 WL 802353 (D. Neb. Apr. 12, 2002).

Page 10 - FINDINGS & RECOMMENDATION

There is no evidence in this record that Gaines was treated differently than members of other races at Nordstrom. Though she complains that she was never offered assistance by Nordstrom's sales associates, there is no evidence – not even in the form of affidavit testimony from Gaines – that salespeople were helping white customers and ignoring Gaines. Moreover, Gaines did not ask for assistance while trying on clothing. Gaines was able to freely browse the store and try on various items of clothing without interference. With respect to monitoring Gaines's movement when she moved around the store wearing the Missoni outfit, Gaines offered no evidence to suggest Nordstrom departed from its normal loss prevention procedures or applied their policies differently to Gaines because of her race. The same is true for the confrontation between Gaines and Powers, and Gaines's detention. There is simply no evidence that Gaines was singled out or treated unequally because of her race, and as a result the court recommends that summary judgment be granted in favor of Nordstrom on this claim.

### III. Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress ("IIED") contains the following elements:

> (1) the defendant intended to inflict severe mental or emotional distress on the plaintiff; (2) the defendant's acts were the cause of plaintiff's severe emotional distress; and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841, 849 (1995) (citation omitted).

Gaines presents no argument and cites no authority to sustain her claim of intentional infliction of emotional distress. Her sole response is a conclusory statement contending that "[w]hether or not the conduct of the defendant Nordstrom's employees transgressed the bounds

Page 11 - FINDINGS & RECOMMENDATION

of socially tolerable conduct is a fact question for the jury and those claims should go to the jury since the facts are disputed." (Pl's Resp. at 2.) However, whether a defendant's conduct rises to that level of severity is initially a question of law for the court. Harris v. Pameco Corp., 170 Or. App. 164, 171, 12 P.3d 524, 529 (2000). The inquiry is whether the defendant's conduct constitutes "extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior." Hall v. May Dept. Stores, 292 Or. 131, 137, 637 P.2d 126, 130 (1981), abrogated on other grounds by McGanty, 321 Or. at 549, 901 P.2d at 852. "Conduct that is merely 'rude, boorish, tyrannical, churlish and mean' does not satisfy that standard[.]" Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or. App. 234, 239, 828 P.2d 479, 481 (1992) (quoting Patton v. J.C. Penney Co., 301 Or. 117, 124, 719 P.2d 854, 858 (1986)).

   Presumably the conduct Gaines is relying upon to support this claim is her arrest and detention by Nordstrom employees. However, even viewing the evidence in the light most favorable to Gaines, the conduct complained of does not meet the level of outrageousness necessary to sustain an IIED claim. In cases where a person is detained on suspicion of theft, mere detention, or detention coupled with questioning the suspect, is not enough to constitute "extreme and outrageous conduct." See Smithson v. Nordstrom, Inc., 63 Or. App. 423, 426-27, 664 P.2d 1119, 1121 (1983). There must be another element to the detention such as using "deliberate and systematic tactic[s] to threaten and frighten" the plaintiff into a confession, or "cold-blooded . . . interrogation upon scanty evidence." Id. (quoting Hall v. The May Department Stores, Inc., 292 Or. 131, 141, 637 P.2d 126 (1981)). Powers and Udy responded quickly to get Gaines under control after Gaines kicked at Powers. They did not use an unreasonable amount of force to gain control over her, nor did they do anything out of the

ordinary to her while she was detained. Powers and Udy took Gaines to a room where they waited for the police to arrive. They did not interrogate Gaines or treat her poorly while they waited. Emotional distress created as "an incidental effect of an unpleasant confrontation" is not enough to sustain a claim, id., and that is the best Gaines can show on this summary judgment record.

Gaines's IIED claim also fails because she has offered no evidence, beyond her own self-serving conclusions, that she suffered severe emotional distress as a result of Nordstrom's actions. A claim can be maintained "'only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.'" Checkley v. Boyd, 170 Or. App. 721, 743, 14 P.3d 81, 95 (2000), quoting Restatement (Second) of Torts 46 comment j (1965).

For the foregoing reasons, the court recommends that summary judgment be granted in favor of Nordstrom on the IIED claim.

IV.  Supplemental Jurisdiction

A federal court has discretion whether to grant supplemental jurisdiction over pendent state claims or to dismiss them. See 28 U.S.C. § 1367(c)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988). Although this court has made a substantive recommendation on Gaines's state law discrimination claim, it was appropriate to do so because of the similarity in analysis with the federal law discrimination claims. It was also appropriate for this court to consider Gaines's IIED claim because the issues were clear and easily resolved.

The court recommends declining supplemental jurisdiction with respect to the two remaining state law claims – false imprisonment and assault. These claims involve unique issues of state law. In particular, the court must determine whether probable cause of shoplifting may exist before an alleged shoplifter leaves the store without paying for merchandise. In addition, the record shows that as between Powers and Gaines, it was Powers who initiated the first physical contact in the scuffle – not Gaines. Application of Oregon's statutory "merchant exception," Or. Rev. Stat. §131.655, to these facts further complicates the analysis of both the false imprisonment and assault claims. Accordingly, considerations of comity favor allowing the state court to hear this matter if Gaines chooses to pursue it, and the court should decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)).

## CONCLUSION

For the foregoing reasons, this court recommends that the defendant's Motion for Summary Judgment (No. 43) be granted and a judgment be entered dismissing the following claims with prejudice: 42 U.S.C. § 1981 (Claim 1); 42 U.S.C. § 2000a (Claim 2); Or. Rev. Stat. § 659A.403 (Claim 3); and intentional infliction of emotional distress (Claim 4). The court recommends dismissing the plaintiff's false imprisonment and assault claims (Claims 5 & 6) without prejudice pursuant to 28 U.S.C. § 1367(c), and that a judgment be entered accordingly.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due August 28, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are

filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 14th day of August, 2006.

        /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 15 - FINDINGS & RECOMMENDATION